# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PLATT, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 16 C 3898 |
| DOROTHY BROWN, as Clerk of the Circuit Court of Cook County, and MARIA PAPPAS, as Treasurer of the Cook County Treasurer's Office, | ) ) ) ) ) ) | Judge John Z. Lee |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Platt, individually and on behalf of a putative class, has sued Clerk of the Circuit Court of Cook County Dorothy Brown and Cook County Treasurer Maria Pappas in their official capacities. Platt alleges that Defendants have violated his due process and equal protection rights as guaranteed under the United States and Illinois Constitutions by collecting a bail bond fee equivalent to 1% of the bail amount. He also asserts that this practice violates the uniformity clause of the Illinois Constitution and constitutes unjust enrichment under Illinois common law. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, the Court grants Defendants' motion to dismiss.

## Factual Background

Any criminal defendant arrested in Cook County, for whom bail is set, may secure his or her pretrial release by depositing 10% of the full bail amount with the Clerk's Office. Compl. ¶ 19. Prior to January 1, 2016, once the defendant's criminal case had progressed to the point when bond was no longer necessary, the Clerk's Office returned 90% of the 10% deposit to the criminal defendant, while retaining the remaining 10% of the deposit as a bail bond fee. *Id.* ¶ 20; *see* 725 Ill. Comp. Stat. 5/110-7(f). For example, if a defendant's bail were set at $10,000, he would pay a $1,000 deposit to secure his pretrial

1

release. At the end of the case, assuming that the defendant complied with the conditions of the bond, he would receive back $900 from the Clerk's Office, and the Clerk's Office would keep $100 of the deposit as a bail bond fee. Compl. ¶ 29. Alternatively, a defendant could secure the full amount of the bond using cash, stocks, bonds, or real estate, in which case he would not be required to pay a deposit or fee at all. *See* 725 Ill. Comp. Stat. 5/110-8.

In 2014, Plaintiff Platt was arrested after a bar fight that resulted in the death of another person. Compl. ¶ 34. The Cook County State's Attorney Office charged Platt with first-degree murder. *Id.* ¶ 35. A judge set Platt's bail at $2 million, and Platt paid a deposit of $200,000 to secure his release pending trial. *Id.* ¶¶ 36, 38. After Platt was acquitted, the Clerk's Office returned his deposit, less a $20,000 bail bond fee. *Id.* ¶ 42. According to the complaint, the actual cost of processing a criminal defendant's bond is "$100 or less." *Id.* ¶ 44.

In 2015, the Illinois General Assembly proposed an amendment to the bond statute that would cap bail bond fees in Cook County at $100. *Id.* ¶ 49; *see* Compl., Ex. 1. The Governor signed the amendment into law on August 20, 2015, and it became effective on January 1, 2016. *Id.* ¶ 55. Platt brings an action on behalf of all individuals who paid a bail bond fee of more than $100 for the five years prior to January 1, 2016. *Id.* ¶ 10.

## **Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the complaint does not have to include "detailed factual allegations," it must "include sufficient facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Cole v. Milwaukee Area Tech. Coll. Dist*., 634 F.3d 901, 903 (7th Cir. 2011).

In deciding a Rule 12(b)(6) motion to dismiss, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible

inferences in his favor." *Cole*, 634 F.3d at 903. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## Analysis

### I. Motion to Dismiss Counts I and II: Due Process

In Counts I and II, Platt alleges that a bail bond fee that exceeds $100 violates the Due Process Clauses of the United States and Illinois Constitutions. Specifically, Platt contends that the collection of such a fee violates substantive due process because the fee does not relate to the cost of administering a bail bond (which Plaintiff asserts is $100) and, therefore, its collection "impedes the due administration of justice." Compl. ¶¶ 26, 67, 72. In addition, Platt asserts that the collection of fees exceeding $100 violates procedural due process because, on balance, the private interest in receiving back the remaining ten-percent of the deposit outweighs the state's interest in collecting such fees, especially in light of what Platt characterizes as the lack of procedural safeguards around imposition of the bail fee itself.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 US. 702, 720–21 (1997).

The Supreme Court has cautioned against "expand[ing] the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and openended." *Id.* at 720. Rights that have been recognized as fundamental are limited to: "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion[.]" *Id.* (citations omitted).

"Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively

phrased, that the practice be neither arbitrary nor irrational. *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003). Furthermore, "[i]t is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). In this vein, courts have emphasized that "substantive due process is not 'a blanket protection against unjustifiable interferences with property.'" *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003) (quoting *Schroeder v. City of Chi.*, 927 F.2d 957, 961 (7th Cir. 1991)).

The bail bond fee at issue in this case does not encroach on any of the above-listed fundamental rights. Nor does it have the potential of negatively affecting a criminal defendant's liberty because the fee is exacted at the end of the criminal case when the bond deposit is partially refunded. Accordingly, the bail bond fee need only be rationally related to a legitimate government interest. *See Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000) (where a statute does not implicate a fundamental right, "substantive due process requires only that the statutory imposition not be completely arbitrary and lacking any rational connection to a legitimate government interest) (citations omitted).

The United States Supreme Court in *Schilb v. Kuebel*, 404 U.S. 357, 370 (1972), analyzed the same Illinois statute at issue here and rejected a due process challenge to the bail bond fee requirement. *Id.* at 370. The Court found the fee to be administrative, concluding that the scheme "smacks of administrative detail" and noted that there was no fundamental right to be free of administrative costs. *Id.* Applying the highly-deferential rational basis test, the Supreme Court then concluded that the fees were related to Illinois' legitimate interest in reforming its bail system, which essentially put professional bail bondsmen out of business and shifted the system of administering bail bonds to the courts. 404 U.S. at 370–72.

Platt argues that *Schilb* does not foreclose his substantive due process claim because, according to him, *Schilb* involved a facial challenge to the bail bond statute, whereas he challenges the statute as

4

applied to him. But, regardless of the theory on which the Illinois bail bond statute is challenged, *Schilb*'s holding is dispositive of Platt's claim. Under *Schilb*, Illinois' bail bond statute satisfies due process because the 1% administrative fee bears a rational relationship to Illinois' legitimate interest in defraying the expenses of administering the bail bond system as a whole. Thus, *Schilb*'s holding governs, regardless of whether the administrative fee is $200 or $20,000.

For his part, Platt would have the Court adopt a test that focuses on the relationship between the particular administrative fee and the transaction costs of processing the specific bail bond in question.[1] But that was not the test employed by the Supreme Court in *Schilb*. Rather, the Court compared the bond fee in relation to the costs of administering the bail bond system *in toto*. *Id.* at 367–68, 370–71; *see also Markodonatos v. Vill. of Woodridge*, 760 F.3d 545, 547 (7th Cir. 2014) (*en banc*) (Posner, J.) (plurality opinion) ("[T]he constitutionality of a fee for a government service does not depend on proof of an exact equality between the cost of the service and the size of the fee.").

It is important to point out that Platt does not challenge the finding of probable cause for his arrest, the amount of his bail, or the statutory process by which the state court judge determined the amount of the bail. Nor does Platt argue that the 1% fee had any impact on his ability to satisfy his bail by posting the necessary bond and obtaining his pretrial release. *Compare Payton v. Cty. of Carroll*, 473 F.3d 845, 851 (7th Cir. 2007) ("The private interest that is affected by the official action here [*i.e.*, the requirement that a defendant pay administrative fee to sheriff when posting bond] is the detainee's liberty interest."). Rather, Platt's claim focuses on the amount of the 1% bond fee in his case. But "[p]robable cause justifie[s] substantial burdens," including financial ones, *see Markodonatos*, 760 F.3d at 553 (Easterbrook, J., concurring), and "[t]he right to bail, like the right to travel abroad, is a valuable right for

---

[1] The cases upon which Platt relies are readily distinguishable. *American Trucking Associations, Inc. v. Scheiner*, involved a challenge to a flat tax under the Commerce Clause. 483 U.S. 266, 289–90 (1987). *Loretto v. Teleprompter Manhattan CATV Corp.* dealt with a challenge to government action under the Takings Clause. 458 U.S. 419, 434–35 (1982). And *State Farm Mutual Automobile Insurance Co. v. Campbell* was a challenge to a jury verdict. 538 U.S. 408, 417, 419–20, 425 (2003).

which the person seeking it, whether guilty or innocent, must pay," *id.* at 547 (Posner, J.) (plurality opinion).

For these reasons, Defendants' motion to dismiss Plaintiff's substantive due process claim is granted.

B. **Procedural Due Process**

Platt also raises a procedural due process challenge to the bail bond fee. *Mathews v. Eldridge* established the prevailing test for determining whether a plaintiff has stated a claim for a violation of procedural due process. 424 U.S. 319, 335 (1976). Under this test, the court weighs three factors: (1) the private interest to be affected by the government's action; (2) the risk of an erroneous deprivation by the procedure currently used and the value of additional procedural safeguards; and (3) the government's interest, including any administrative or financial burdens that additional procedural safeguards would impose. *Id.*

With respect to the first factor, because there is no fundamental right to be free from administrative fees, *Schilb*, 404 U.S. at 365, the payment of a bond fee does not "trigger any heightened level of private interest," see *Broussard v. Parish of Orleans*, 318 F.3d 644, 654–56 (5th Cir. 2003). Furthermore, as stated above, because payment of the bail bond fee is not a condition of release (but rather a cost associated with the refund process), it does not implicate a liberty interest. *See id.* at 655.

Turning to the second *Mathews* factor, the risk of erroneous deprivation is minimal here. As the Supreme Court recognized in *Schilb*, in Illinois, a criminal defendant appears before a criminal trial judge, who holds a bail hearing to determine the appropriate amount of bail. 404 U.S. at 362. In making that determination, the judge considers a host of factors, including but not limited to: (1) the nature and circumstances of the offense charged; (2) whether violence was involved; (3) the condition of the victim; (4) the weight of the evidence against the defendant; (5) the likelihood of conviction and the sentence applicable upon conviction; (6) whether the defendant has motivation or ability to flee; (7) whether the defendant has family ties in the local jurisdiction, in another county, state or foreign country; and (8) the

6

defendant's employment, financial resources, character, mental condition, and past conduct. 725 Ill. Comp. Stat. 5/110-5(a). In addition, the judge sets an amount of bail that he or she finds is not oppressive and reflects the financial ability of the accused. *Id.* 5/110-5(b). If a defendant believes that the trial court has set too high a bail, the defendant may move to reduce the bond. *See* 725 Ill. Comp. Stat. 5/110-6; *see Payton*, 473 F.3d at 851–52 ("The opportunity to seek a reduction in bail is the procedure currently available to minimize whatever risk remains."); *People v. Lilly*, 53 N.E.3d 1028, 1041 (Ill. App. Ct. 2016). Given that Illinois law provides a number of precautions with regard to the setting of the proper bail amount, the Court finds that the risk of erroneous deprivation is low.

Moreover, there is an extremely low risk of improperly calculating the actual bond fee (1% of the total bail amount) to be withheld because this calculation is a ministerial matter with no discretion given to the Office of the Clerk. *See Sickles v. Campbell Cty.*, 501 F.3d 726, 730 (6th Cir. 2007) ("The withholding of funds involves elementary accounting that has little risk of error and is non-discretionary."); *Broussard*, 318 F.3d at 655 (holding that there was a low risk of erroneous deprivation in part because the procedures for calculating the bail fees were clear).

As for the third factor, the State of Illinois argues that it has an interest in collecting the bond fee for the purpose of funding bail administration, which includes the costs of handling bail bonds. This point is well-taken. Illinois has an interest in collecting fees to support the administration of the entire bail system, even if the connection between the fees charged and the administration of the system is not completely clear. *See Broussard*, 318 F.3d at 660 (absent arbitrariness of fees imposed, even a tenuous connection between bail fees charged and administration of bond system suffices).

The State also has an interest in an easily administrable system. The Fifth Circuit in *Broussard* indicated that the government had an interest in conserving resources and not having to implement any additional procedural requirements around collecting bond fees. 318 F.3d at 656. The Third Circuit in *Buckland v. Montgomery County* approved a bail bond system that withheld a percentage fee from every bond deposit, stating, "the percentage method has the virtue of simplicity in its administration, and we

7

cannot conclude that a higher bail may not have a correlation with the increased risk and consequential expense of flight and apprehension." 812 F.2d 146, 149 (3d Cir. 1987).

When the *Mathews* factors are weighed, this Court concludes that Platt has not stated a claim for procedural due process. The private interest at stake is minimal, outweighed by the government interests in funding and maintaining an easy-to-administer bail system. Furthermore, the procedural safeguards with regard to the judicial determination of the total bail amount, as well as the ministerial 1% fee calculation, indicate that the risk of erroneous deprivation is low.

Accordingly, the Court concludes that Platt has failed to state a plausible procedural due process claim in light of *Schilb* and its progeny. Counts I and II are dismissed for failure to state a claim upon which relief may be granted.

## II. Motion to Dismiss Counts III & IV: Equal Protection

In Counts III and IV, Platt claims that bail fees exceeding $100 violate the Equal Protection Clauses of the United States and Illinois Constitutions as well as the Illinois Constitution's uniformity clause. Once again, *Schilb* is instructive. The *Schilb* court held that because there is no fundamental right to be free of administrative fees, the bail statute does not violate equal protection so long as there is a rational basis for treating accused persons differently with regard to bail fees. 404 U.S. at 485. Here, Platt alleges that the actual costs incurred by the Cook County Clerk's Office in processing bail bonds are $100 or less for all accused persons. According to Platt, therefore, requiring any defendant to pay more than that is irrational and arbitrary. Defendants disagree and again assert that bail fees do not merely cover bond processing costs but also defray the cost of the bail system as a whole.

When the legislature reformed the system of bail in Illinois in the mid-60's, its reform shifted the burden and concomitant costs of administering the bail system from private bail bondsmen to the courts. *Id.* at 483 n.8. From then on, it fell to the courts to employ personnel to collect bail deposits, administer bond processing costs, and distribute refunds. To this end, the 1% across-the-board bail fee represents an easy-to-administer method of funding the bail system that may reflect underfunding with regard to

8

defendants with low bail amounts and overfunding with regard to defendants with high bail amounts. Given that Illinois' bail reform involved shifting the lion's share of the burden of administering the entire bail system to the courts, Platt's allegations fail to plausibly show that charging some criminal defendants over $100 in bail fees is not rational related to the state's interest in administering the bail system as a whole. *See Turner*, 207 F.3d at 426 (noting the "highly deferential" nature of rational basis review).

That the Illinois legislature has now amended the bail statute to cap bail fees at $100 does not mean it lacked a rational basis for previously charging more than that if bail was set higher than $10,000. Rather, the Illinois legislature appears to have chosen to decrease the extent to which bail fees fund the bail system. Simply put, limiting the source of funding to cover the costs of the bail system does not mean that those costs ceased to exist. Rather, it merely means that the funds must be generated elsewhere.

Platt supplements his equal protection claim with arguments about the inherent unfairness of having some individuals pay $20,000 for the same service that others are receiving for $25. In support, Platt relies on statements made by a single state legislator and a single Cook County Board Commissioner regarding the perceived unfairness of the 1% bail fee. This argument is unpersuasive. Stray statements by individual legislators have little bearing on Court's analysis regarding the constitutionality of Illinois' bail bond scheme. *See Jeroski v. Federal Mine Safety & Health Review Comm'n*, 697 F.3d 651, 655 (7th Cir. 2012) (discussing committee reports and stray comments by individual legislator and stating that "[i]nferring collective intent is often a hazardous enterprise."). Moreover, Platt's fairness argument ignores that the differences between a criminal defendant who is subject to a low bail amount and another who receives a much higher bail amount, including greater risk of flight and endangerment to the community, which in turn may necessitate greater supervision and possible revocation and detention, as well as the potential of a much lengthier term of imprisonment upon conviction. *See Schilb*, 404 U.S. at 367 (noting the state's rational need to address "the expenses that inevitably are incurred when bail is jumped").

Next, Platt also alleges that charging bail fees in excess of $100 violates the Illinois Constitution's uniformity clause. The uniformity clause states, "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2.

"In a uniformity-clause challenge, . . . the scope of a court's inquiry is relatively narrow." *Empress Casino Joliet Corp. v. Giannoulias*, 942 N.E.2d 783, 788 (Ill. App. Ct. 2011) (internal citations omitted). "The relevant question is not whether the differences among [the classes] are real and substantial but, rather, whether the differences are so great that the legislature's decision to impose the fee upon all [entities] in . . . a single class bears no reasonable relationship to the object of the fee." *Mellon v. Coffelt*, 730 N.E.2d 102, 108 (Ill. App. Ct. 2000). A court "will uphold a taxing classification if a set of facts can be reasonably conceived that would sustain it." *Friedman v. White*, 42 N.E.3d 902, 911 (Ill. App. Ct. 2015).

In *Mutual Tobacco Co., Inc. v. Halpin*, 111 N.E.2d 155, 159 (Ill. 1953), an economy-brand cigarette distributor challenged an Illinois statute on the basis of the uniformity clause. The statute taxed all cigarette distributors 1.5 mills per cigarette regardless of the cost of the cigarette. *Id.* The plaintiff argued that the statute effected economy-brand cigarette distributors to a greater extent than luxury-brand cigarette distributors because plaintiff paid $184 in tax on $1000 worth of its cigarettes, while a luxury brand distributor only paid $95. *Id.* at 158. The Illinois Supreme Court affirmed the dismissal of the complaint, holding that the tax did not lack uniformity as to the class upon which it operated, namely cigarette distributors. *Id.* The court stated that, even though the tax was not "the most equitable one that could be devised, . . . [p]erfect equality and uniformity of taxation as regards individuals . . . is a dream unrealized." *Id.* at 159.

Here, too, Defendants withhold 1% of the entire bail amount from all criminal defendants who pay a bail deposit, and the statute results in different bail fees depending on the amount of bail that a judge deems appropriate. As discussed above, imposing the 1% bail fee upon all criminal defendants who

10

pay a bail deposit bears a reasonable relationship to the object of the fee: to defray the costs of the bail system. As in *Mutual Tobacco*, although the 1% fee may not the most equitable one that could be devised, the fee does not violate the uniformity clause.

For these reasons, the Court grants Defendants' motion to dismiss the equal protection clause and uniformity clause claims for failure to state a claim upon which relief can be granted.

### III. Motion to Dismiss Count V: Unjust Enrichment

In Count V, Platt claims that Defendants have been unjustly enriched by collecting invalid and unconstitutional bail bond fees to which they were not entitled. Compl. ¶ 84. Because the Court holds that assessing all criminal defendants a bail bond fee of 1% of the total bail amount passes constitutional muster, the Court grants Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim . . . will stand or fall with the related claim.").

### Conclusion

For the reasons stated herein, Defendants' motion to dismiss [19] is granted. This case is hereby terminated.

**IT IS SO ORDERED.**                              **ENTERED   3/31/17**

_____
**John Z. Lee**
**United States District Judge**